Ronald P. Grossman, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 3, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*S. Sanford Kantz,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Bernadette A. Duncan,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., June 27, 1978:

Ronald P. Grossman (Claimant) appeals a decision of the Unemployment Compensation Board of Review which, after remand by this Court, affirmed a referee's denial of benefits.

On April 22, 1974, Claimant was instructed by his superiors in the Pennsylvania State Police (Employer) to travel from New Castle, Pennsylvania, where he was stationed, to Erie, Pennsylvania, pursuant to an insurance fraud investigation. Claimant's normal working hours were 8 o'clock A.M. to 4:30 P.M. However, at 3:30 P.M. that day, Claimant received permission from his headquarters to work *two additional hours.* Subsequent thereto, Appellant drove from Erie

to West Pittsburg located in Lawrence County. Later that evening, a caller telephoned one of Claimant's superiors, Lieutenant Fonseca, complaining of Claimant's conduct. Through interviews and reports from third parties, Lieutenant Fonseca was told that Claimant discharged a weapon; that he had been seen drinking at a private club; that Claimant was also seen shooting pool for drinks in a private club; and that Claimant had illegally parked his official vehicle on a sidewalk. As a result of these allegations and his refusal to answer any questions concerning his whereabouts that evening, Claimant was suspended for a period of 30 days.

In addition to the 30-day suspension, Claimant was suspended for a five-day period for failure to properly report an absence due to illness. After an initial decision by the Board affirming the referee's denial of benefits based upon this conduct, Claimant appealed to this Court which remanded the case to the Board for the purpose of providing more detailed and precise findings of fact. On remand, the Board, without taking additional testimony, rendered a second decision affirming the referee. Claimant appeals this denial of benefits to our Court.

Claimant first raises for our consideration his contention that the findings of fact are not supported by substantial evidence of record. We disagree. The findings of the Board alleged by Claimant to be relevant to this inquiry are the following:

2. On April 24, 1974, the claimant was granted permission by his superior to work overtime and return late from Erie where he was conducting an investigation using a state automobile.

3. A rule of the Pennsylvania State Police, known to the claimant, required that he report back from overtime duty and return his state

vehicle to his headquarters when his work for that day was conpleted [sic].

4. The claimant failed to report to his superiors when he returned from Erie and did not return his state car to his headquarters.

5. A rule of the Pennsylvania State Police, known to the claimant, required that a member unable to report for duty because of illness should immediately notify his superior of the nature of the illness, where he will be recuperating, and his expected time of return to duty.

6. On April 23, 1974, the claimant did not report to his headquarters and did not properly report his absence due to illness. The claimant later claimed that he had been ill.

7. The claimant did not report to his duty station until April 25, 1974.

8. The claimant received a disciplinary suspension of 30 days beginning July 1, 1974 because of his violation of State Police regulations.

Based upon these findings, the Board concluded that Claimant was ineligible for benefits under Section 402 (e) of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

Claimant initially argues that the second finding of fact is without support in the record. He correctly points out that the date indicated, April 24, 1974, is factually in error and that the incident alleged to have occurred relates to events which transpired on April 22, 1974. However, we cannot conclude that this apparent typographical inaccuracy by the Board amounts to reversible error. As counsel for the Board astutely observes in his brief, Claimant has not suggested that he was detrimentally misled by this insignificant error.

Claimant next disputes the Board's third finding of fact. Section 2.17 of the Pennsylvania State Police Field Regulations (Regulations) states as follows:

## USE OF OFFICIAL VEHICLES

A Member shall not use a Commonwealth vehicle for personal business or for any other reason except as authorized. Out-of-State travel will be permitted only in accordance with existing regulations. A Member shall not use his personal vehicle for official business unless specifically authorized to do so by his Troop Commander or Division Director.

As Claimant notes, the Board's third finding of fact does not exactly parallel the above quoted regulation. However, this finding of fact *is* supported by the record when the regulation above is viewed in conjunction with the testimony of one of Claimant's superiors, Lieutenant Fonseca. This witness specifically testified that he had given Claimant permission to work for one additional two-hour period only and Claimant was instructed to return to his station in New Castle at the termination of his overtime. This authorization considered in conjunction with Section 2.17 of the Regulations permitted Claimant to use his official vehicle merely for that time required of him to return to the station at the end of the approved two-hour overtime.

Claimant next disputes the Board's fourth finding of fact. However, the testimony of Lieutenant Fonseca that Claimant did not report to his station with his official vehicle until the day following his investigation in Erie adequately supports this finding.

Claimant next contends that these findings do not, as a matter of law, amount to willful misconduct. We disagree. Though not statutorily defined, willful misconduct as that term is used in Section 402(e) of the

Act, has been judicially developed to encompass the wanton and willful disregard of an employer's interest, a deliberate violation of the employer's rules, a disregard of expected behavior standards or negligence manifesting culpability, wrongful intent, evil design or an intentional disregard of the employer's interest or the employee's obligations to the employer. *Serban v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 147, 370 A.2d 755 (1977). Moreover, an employer has the burden of proof with regard to willful misconduct. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). We are convinced that Employer has met this burden. As the findings of fact indicate, Claimant committed a deliberate violation of Employer's rules. He was specifically told by Lieutenant Fonseca to return to the station upon the completion of his two hours of overtime. Furthermore, the record establishes that Claimant possessed a copy of Employer's Regulations, including Section 2.17 pertaining to unauthorized use of official vehicles. Clearly, the Board acted properly in sustaining the referee's refusal to grant benefits for this first 30-day period.

We next turn our attention to the additional suspension of five days. The findings of fact made by the Board relevant to this alleged infraction are Findings Nos. 5, 6 and 7 quoted above.

Initially, it must be noted that the Board's findings incorrectly refer to April 23 and April 25 as the operative dates with respect to the five-day suspension. The correct dates, in fact, were May 24 and May 26, respectively. However, as the Board indicates in its brief, the incorrect dates are merely the result of typographical errors and since Claimant does not deny that he was at all times aware of the actual dates in-

volved, we cannot conclude that the Board's inaccuracies amount to reversible error.

Section 1.43 of the Regulations provides in part:

## NOTIFICATION OF ILLNESS OR INJURY

A Member who knows that he will be unable to report for duty due to illness or injury shall immediately notify his superior officer (or ensure such notification) advising him of the nature of the injury or illness, where he will be recuperating, and the expected date of his return to duty.

Although part of the evidence of record substantiating this charge was hearsay and was properly objected to by counsel for Claimant, our thorough review of the record convinces us that competent evidence, independent of the hearsay testimony, does indeed support the findings to which Claimant objects. Lieutenant Babics, another of Claimant's superiors, and the duty officer at the time in question, testified that although Claimant had in fact notified the department of his inability to report for work on May 24, he had failed to report the location of his recuperation as required by Section 1.43 of the Regulations. According to his own testimony, Lieutenant Babics then directed several members of the department in an unsuccessful attempt to locate Claimant.

Claimant argues alternatively that these findings do not as a matter of law amount to willful misconduct. As was the case with respect to the facts underlying the initial 30-day suspension, Claimant has committed a deliberate violation of a rule of his employer, i.e., Section 1.43 of the Regulations. It cannot be said, therefore, that the Board committed an error of law in refusing to grant benefits for the additional five-day period.

Finally, we note that Claimant contends that the "real" reason for his suspension was his failure to cooperate with a departmental investigation into his conduct, and, therefore, it is argued that the department can suspend him for no other reason. While it is true that Claimant was originally charged with five separate violations of Employer's rules (including the two for which the suspensions were invoked), uncontradicted testimony of record establishes that Claimant could have been dismissed for any one of these five violations. More significantly, our careful review of the record fails to provide support for the premise to Claimant's contention, *i.e.*, that the suspensions were initially imposed solely for Claimant's failure to cooperate in an internal investigation into his conduct.

Accordingly, we

### ORDER

AND Now, this 27th day of June, 1978, the decision of the Unemployment Compensation Board of Review is affirmed.